**Niels Th. THIESS, Plaintiff–Appellant,**

v.

**James L. WITT, Director, Federal Emergency Management Agency, Defendant–Appellee.**

**Jeanette TYNER and Shirley Buterbaugh, Plaintiffs– Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 96–1060.**

United States Court of Appeals, Federal Circuit.

Nov. 1, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Jan. 2, 1997.

Joseph V. Kaplan, Passman & Kaplan, Washington, D.C., argued, for plaintiffs-appellants.

John E. Kosloske, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for defendants-appellees. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before NEWMAN, MAYER, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This is a consolidated appeal of two actions concerning the same issue of statutory interpretation. One action was filed on behalf of an uncertified class of approximately two thousand persons. The appellants request review of the decisions of the United States District Court for the District of Columbia[1]

holding, on summary judgment, that temporary Disaster Assistance Employees of the Federal Emergency Management Agency (FEMA), appointed pursuant to 42 U.S.C. § 5149(b), are not entitled to payment of annual leave, sick leave, and holiday pay pursuant to the Leave Act, 5 U.S.C. §§ 6301–26. The action was brought in the district court pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2), the plaintiffs having waived any right to recovery in excess of $10,000 per plaintiff.

## DISCUSSION

### A

■ The Disaster Relief Act of 1974, 42 U.S.C. § 5121 *et seq.*, extended earlier statutes authorizing Federal agencies to provide prompt relief when the President declares that an emergency or major disaster exists. The President may direct a Federal agency to "utilize its authorities and the resources granted to it under Federal law (including personnel, equipment, supplies, facilities, and managerial, technical, and advisory services) in support of State and local assistance efforts." 42 U.S.C. § 5170a.

In 1979 President Carter transferred to the FEMA the disaster relief functions previously delegated or assigned to other Federal agencies. Executive Order 12,148, § 1; 3 C.F.R., 1979 Comp. 412 (1980). Thus the FEMA is directed to "coordinate all disaster relief assistance (including voluntary assistance) provided by Federal agencies, private organizations, and State and local governments." 42 U.S.C. § 5192(a)(2). In order to enable swift and flexible response, the Disaster Relief Act authorized agencies responding to a disaster to hire temporary personnel:

(b) In performing any services under this chapter, any Federal agency is authorized—

(1) to appoint and fix the compensation of such temporary personnel as may be necessary, without regard to the provisions of title 5, United States Code, governing appointments in competitive service.

---

1. *Thiess v. Witt,* Civil Action No. 92–1552 (D.D.C. Sept. 8, 1994) and *Tyner v. United States,* Civil Action No. 93–0496 (D.D.C. Oct. 19, 1994).

42 U.S.C. § 5149(b)(1). The appellants were appointed and paid by the FEMA pursuant to this authorization. Each person upon employment was given a document stating that the period of employment is "intermittent," that there is not a specified tour of duty, that payment is on a "when actually employed" basis, and that there is no payment for sick or annual leave or holidays not worked. FEMA Instruction 8600.1.

The appellants argue that although their employment was temporary, they were Federal employees having an established regular tour of duty in that they worked fixed hours for prolonged periods. They point out that part-time employees who have an established regular tour of duty are entitled to paid leave and pay for holidays not worked. Thus the appellants argue that their temporary status does not deprive them of entitlement to leave and paid holidays as set forth in title 5, and that the FEMA incorrectly interpreted and applied its governing statute.

The Leave Act, 5 U.S.C. § 6301 *et seq.*, establishes entitlement to annual leave, sick leave, and holiday pay for most Federal employees. The Leave Act specifically excepts a few classes of employees, but does not mention Disaster Assistance Employees or any class that clearly encompasses such personnel. It is not disputed that part-time employees having an established regular tour of duty are generally subject to the Leave Act. *Cf.* 5 U.S.C. § 6301(2)(B)(ii); *Cutright v. United States,* 953 F.2d 619 (Fed.Cir.1992).

The government's position is that the appellants are expressly excepted from the Leave Act by the terms of 42 U.S.C. § 5149(b)(1), which authorizes the FEMA "to appoint and fix the compensation of such temporary personnel." Appellants respond that annual and sick leave and holiday pay are not "compensation" and thus are not within the agency's authority to withhold. Appellants also argue that the words of § 5149(b)(1) authorizing compensation "without regard to the provisions of title 5 governing appointments in the competitive service" simply mean that Congress intended to exempt these temporary appointments from the time-consuming competitive civil service examination and grade classification appoint-

ment processes, and not from the entitlements of Federal employees under the Leave Act provisions of title 5.

We conclude that the appellants' interpretation of the statute is incorrect, for the plain text of § 5149(b)(1) excludes the statutory obligations of title 5 for appointments in the competitive service. In implementation of the national purpose of facilitating the hiring of short-term, temporary personnel in emergency situations, § 5149(b)(1) authorizes the agency to appoint temporary personnel and fix their compensation, and specifically exempts the agency from the provisions of title 5 that apply to appointments in the competitive service. These provisions include the general schedule pay terms, classification requirements, leave and holiday provisions, and other aspects of title 5, all directed to permanent appointments. An example of the legislative history confirms that the purpose was to authorize the agency to "temporarily employ additional personnel without regard to civil service laws . . . ." Conf. Rep. No. 91–1752, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 5498, 5501. We discern no change in policy from the initial enactment of the statute and ensuing reenactments, executive orders, and amendments, including the various reprintings and revisers' and marginal notes to which our attention has been directed.

**B**

The district court viewed the issue as turning on the meaning of "compensation" as used in 42 U.S.C. § 5149(b)(1). The court observed that "compensation" is not defined in the Disaster Relief Act and concluded that its meaning is ambiguous, based in the diverse usages of "compensation" that were presented by the parties in support of both sides of the argument. The court held that the agency's interpretation of an ambiguous term in a statute must receive judicial deference, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agen-

cy's answer is based on a permissible construction of the statute.")

 It was explained in *Chevron* that deference to an agency's interpretation of a term in a statute is appropriate when " 'a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.' " 467 U.S. at 844, 104 S.Ct. at 2782–83 (quoting *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961)). The word "compensation," although sometimes used loosely, is a term of art in the employment lexicon. We doubt that Congress intended to authorize the FEMA to set its own definition of so ubiquitous and critical a term of employment as "compensation." The meaning of "compensation" is not specific to disaster relief, and is not a matter within the special expertise of the FEMA. Although, as discussed in *Merck & Co. v. Kessler*, 80 F.3d 1543, 1549 (Fed.Cir.1996), agency interpretations through the rulemaking process warrant substantial deference, a term of a statute does not become ambiguous because it is possible to articulate a different construction. *See Reno v. Koray*, —— U.S. ——, ——, 115 S.Ct. 2021, 2029, 132 L.Ed.2d 46 (1995) (citing *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (applying the rule of lenity)). We conclude that the term "compensation," as used in § 5149(b)(1), requires interpretation as a matter of law, and not as a matter of deference.

### C

 Appellants argue that "compensation" means only salary or rate of pay, and that since accrual of leave and pay for holidays are not salary or rate of pay, they are not within the FEMA's authority to withhold.

 Review of the usage of "compensation" in the employment sense shows that it is used as a general term, broader than salary or rate of pay. Federal pay provisions illustrate this usage in various employment contexts. For example, 4 C.F.R. § 9.1 provides for "a compensation system including salaries, benefits and incentives" for the Senior Executive Service. 5 C.F.R. § 1201.115 states that an agency may be required to provide an appellant before the Merit Systems Protection Board with "pay, compensation, and all other benefits as terms and conditions of employment" during the period between initial and final Board decisions. 5 C.F.R. § 410.508 states that expenses of training exclude "salary, pay or compensation"; 5 C.F.R. § 2636.203(a)(7) excludes from the definition of honorarium, "salary, wages and other compensation." Although the appellants have directed our attention to other Federal pay provisions in which the word "compensation" is used for wages generally, in those instances the pay provisions do not distinguish between salary and pay-related benefits such as leave and holiday pay; they do not exclude leave and holiday pay from "compensation."

We conclude that the usage of "compensation" is consistent, when the term is used in the technical employment sense, as including leave and holiday pay. Thus we reach the same conclusion as did the FEMA. The FEMA interpreted "compensation" as encompassing leave and holiday pay, and thus read § 5149(b)(1) as authorizing the FEMA to set compensation for temporary Disaster Assistance Employees without regard to the provisions of title 5 relating to leave and holiday pay. Thus § 5149(b)(1), authorizing the FEMA to set the "compensation" of its temporary Disaster Assistance Employees, authorizes the FEMA to grant or withhold leave and holiday pay, without regard to the provisions of title 5. This accommodates the flexibility appropriate to hiring temporary employees in emergency or disaster situations, whereby such employment may be for quite short periods, and in no event can exceed two years.

Appellants cite *Amell v. United States*, 182 Ct.Cl. 604, 390 F.2d 880 (1968), as supporting the position that "compensation," as used in the Federal Employees Pay Act of 1945, was limited to wages and salaries and did not include other employment benefits. In *Amell* the Navy was authorized to set the pay of civilian employees working on United States vessels so as to be commensurate with pay in the private maritime industry; thus

the Navy increased the pay of its civilian employees whenever private maritime industry employees negotiated an increase in pay. The suit arose when private marine engineers negotiated an increase in the form of increased employer contributions to the union's pension and welfare plan, and the Navy refused to provide the equivalent increase in pay. The Court of Claims observed that the engineers' retirement benefits were covered by the Civil Service Retirement System and were periodically adjusted by Congress, independent of any matching pay provision. The court concluded that a matching of the increase in retirement benefits of private maritime employees with a pay increase for the civilian Navy employees would be in addition to the periodic increases in retirement benefits provided by Congress. Thus the court held that only increases in salaries and wages were authorized to be matched by the Navy in order to provide parity in "compensation." *Amell* does not support the relief requested by the appellants, for the issue of parity in retirement benefits does not encompass parity in paid leave and holidays. *Amell* turned on special facts, and does not provide guidance to the case at bar.

### ·D

■ The Disaster Relief Act is specific to authorizing and facilitating governmental action in response to emergencies and disasters. Thus the statutory provision authorizing the agency to fix compensation for temporary Disaster Relief Employees would take precedence over the Leave Act, as the statute states. *See D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574 (Fed.Cir. 1990). It is a standard rule of construction that "a specific statute controls over a general one 'without regard to priority of enactment.'" *Bulova Watch Co. v. United States,* 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961) (quoting *Townsend v. Little,* 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012 (1883)).

This ground adds support to our conclusion that it is inapt to draw an analogy to part-time permanent employees, and that 42 U.S.C. § 5149(b)(1) authorizes the FEMA to exclude sick and annual leave and pay for holidays not worked, in fixing the compensation of temporary Disaster Assistance Employees.

*AFFIRMED.*