# United States Court of Appeals for the Federal Circuit

---

**ROBERT M. ATHEY, MICHAEL R. CLAYTON, THELMA R. CURRY, RICHARD S. DROSKE, RALPH L. FULLWOOD, PAUL D. ISING, CHARLES A. MILBRANDT, TROY E. PAGE,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-2277

---

Appeal from the United States Court of Federal Claims in No. 1:99-cv-02051-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: October 31, 2018

---

IRA MARK LECHNER, Washington, DC, argued for plaintiffs-appellants.

MIKKI COTTET, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by HILLARY STERN, CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before REYNA, SCHALL, and STOLL, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Robert M. Athey, Michael R. Clayton, Thelma R. Curry, Richard S. Droske, Ralph L. Fullwood, Paul D. Ising, Charles A. Milbrandt, and Troy E. Page ("Appellants") are former employees of the Department of Veterans Affairs ("VA"). Appellants were employed by the VA under title 38 of the United States Code.[1] During the period from 1993 through 1999, Appellants retired or separated from their positions with the VA with accrued but unused leave.

The Lump Sum Pay Act ("LSPA"), 5 U.S.C. §§ 5551-5552, which covers Appellants, provides that an employee "who is separated from the service . . . is entitled to receive a lump-sum payment for accumulated and current accrued annual or vacation leave to which he is entitled by statute." 5 U.S.C. § 5551(a). The lump-sum payment must be equal to the pay the separated employee would have received had he or she remained in federal service until the expiration of the period of annual or vacation leave. *Id.* It is undisputed that Appellants received lump-sum payments for their accrued and unused annual leave pursuant to the LSPA. It also is undisputed that, after Appellants left the VA, they received supplemental lump-sum payments. These supplemental lump-sum payments reflected statutory pay increases and general system-wide pay increases that became effective

---

[1]     Appellants fall into one of three categories of employees under the title 38 system: registered nurses and nurse anesthetists under 38 U.S.C. § 7401(1); physicians assistants and expanded-function dental auxiliaries under 38 U.S.C. § 7401(1); and so-called "hybrid" employees under 38 U.S.C. §§ 7401(3) and 7403(f)(1)(a).

prior to the expiration of Appellants' accrued annual leave.

Appellants are members of a class of former VA employees. On June 21, 2006, the class filed a complaint in the United States Court of Federal Claims, alleging that the VA improperly omitted certain pay increases from class members' supplemental lump-sum payments. The allegedly omitted increases included Cost of Living Adjustments ("COLAs") and Locality Pay Adjustments. The complaint additionally alleged that lump-sum payments made to certain members of the class improperly omitted non-overtime Sunday premium pay that the members would have received had they remained in federal service until the expiration of their periods of annual or vacation leave. Certain class members also alleged that their lump-sum payments improperly omitted evening and weekend "additional pay" that they would have received had they remained in federal service until the expiration of their periods of annual or vacation leave.[2] Finally, all members of the class sought pre-judgment interest on their claims under the Back Pay Act ("BPA"), 5 U.S.C. § 5596, as in effect during the years 1993 through 1999. In pertinent part, the BPA provides that interest is authorized for "an amount equal to all or any part of the pay, allowances, or differentials" lost by an "employee"

---

[2]    Section 7453(a) of title 38 of the United States Code states that, "[i]n addition to the rate of basic pay provided for nurses, a full-time nurse or part-time nurse shall receive additional pay as provided by this section." Evening and weekend "additional pay" are provided for in 38 U.S.C. § 7453(b) and (c), respectively.

who has been subjected to "an unjustified or unwarranted personnel action." *Id.*[3]

Appellants' claims for additional COLAs, Locality Pay Adjustments, and non-overtime Sunday premium pay have been resolved. Before us now is Appellants' appeal of two decisions of the Court of Federal Claims. In those decisions, the court held that, as members of the class, Appellants were not entitled to have evening and weekend "additional pay" included in their lump-sum payments. The court also held that Appellants were not entitled to receive pre-judgment interest on amounts improperly withheld from their lump-sum payments.[4] Appellants have timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). For the reasons set forth below, we affirm.

## BACKGROUND

### *Proceedings in the Court of Federal Claims*

Three decisions of the Court of Federal Claims are relevant to this appeal. In the first decision, *Athey v. United States*, 78 Fed. Cl. 157, 161 (2007) ("*Athey I*"), the court addressed the claim that additional pay, in the form of evening and weekend pay, should have been included in lump sum payments received pursuant to 5 U.S.C. § 5551(a). On this issue, the government moved for dismissal pursuant to Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC") for failure to state a claim upon which relief could be granted. The government argued that title 38 entitles Appellants to a lump-sum payment of accrued annual leave, calculated based

---

[3]    The present version of the BPA is the same as the version in effect during the period of 1993–1999.

[4]    Hereafter, for ease of reference in discussing Appellants' BPA claim, we refer to "Appellants' claims to interest on their LSPA claims."

on the basic rate of pay they were earning prior to separation, but that 38 U.S.C. § 7453(i) prohibits the inclusion of "additional pay" (pay for evening and weekend work) in the payout amount. 78 Fed. Cl. at 161. Section 7453(i) states:

> Any additional pay paid pursuant to this section shall not be considered as basic pay for the purposes of the following provisions of title 5 (and any other provision of law relating to benefits based on basic pay):
>
> (1) Subchapter VI of chapter 55.
>
> (2) Section 5595.
>
> (3) Chapters 81, 83, 84, and 87.

38 U.S.C. § 7453(i). Relevant to this appeal, subchapter VI of Chapter 55 encompasses 5 U.S.C. §§ 5551–52, the LSPA. Section 5595 covers severance pay.

Appellants countered with the argument that the term "pay" in 5 U.S.C. § 5551(a) is not limited to "basic pay" (referenced in § 7453(i)), but also includes premium pay. 78 Fed. Cl. at 161. They further argued that § 7453(i) is properly understood to simply mean that "additional pay" is not part of "basic pay" rather than as excluding it from the calculation of "pay" under the LSPA for purposes of a lump-sum payment. *Id.* at 162.

In granting the government's motion, the court held that "additional pay" as part of a lump-sum payment is prohibited under 38 U.S.C. § 7453(i). As seen, § 7453(i) states in pertinent part that "[a]ny additional pay paid pursuant to this section shall not be considered as basic pay for the purposes of . . . Subchapter VI of chapter 55 [LSPA] [and] Section 5595 [Severance Pay]." Citing § 7453(i), the court stated that, in § 7453(i), Congress determined "with clarity" that lump-sum separation pay should not include "additional pay," even if title 5 pro-

vides it to other civil service employees. *Athey I*, 78 Fed. Cl. at 163.

In *Athey v. United States*, 108 Fed. Cl. 617 (2013) ("*Athey II*"), the Court of Federal Claims, in an opinion by the same judge who had issued the court's opinion in *Athey I*, determined that it had jurisdiction over Appellants' claims for interest and that, in seeking interest under the BPA, Appellants had stated a claim upon which relief could be granted. The court thus denied the government's motion to dismiss under RCFC 12(b)(1) for lack of jurisdiction or, in the alternative, under RCFC 12(b)(6) for failure to state a claim upon which relief could be granted.

On the jurisdictional issue, the Court of Federal Claims rejected the government's argument that Appellants had failed to plead a money-mandating statute that would provide the court with jurisdiction under the Tucker Act, 28 U.S.C. § 1491. The court held that, when pled together, the LSPA and the BPA provided the court with jurisdiction to hear Appellants' claims. *See* 108 Fed. Cl. at 619 (citing *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999) (stating that, in order to "fall within the Tucker Act's jurisdictional grant, a claim must invoke a statute that mandates the payment of money damages" and that the BPA is such a "money-mandating" statute when based on violations of statutes or regulations covered by the Tucker Act)). The court reasoned that, in this case, Appellants' claims under the BPA were based upon the LSPA, which the court found to be a money-mandating statute providing "separated federal employees accumulated annual pay when entitled by law." *Id.*

The Court of Federal Claims next addressed the government's argument that Appellants had failed to state a claim upon which relief could be granted because Appellants had not suffered a loss of "pay" as required by the BPA and were not "employees" for purposes of the BPA.

The court turned first to the question of whether Appellants could satisfy the definition of "pay" under the BPA and under the accompanying regulations promulgated by the Office of Personnel Management ("OPM") that were in effect during the period 1993–1999. 108 Fed. Cl. at 620.[5] The court noted that, in December 1981, OPM promulgated regulations interpreting the BPA and authorizing the payment of back pay, mandatory pre-judgment interest, and reasonable attorney fees "for the purpose of making an employee financially whole (to the extent possible)." 46 Fed. Reg. 58,271, 58,273 (Dec. 1, 1981); *see* 5 C.F.R. § 550.801 (1981). The court also noted that the 1981 regulations defined "pay" broadly as "monetary and employment benefits to which an employee is entitled by statute or regulation by virtue of the performance of a Federal function." 46 Fed. Reg. at 58,272; *see* 5 C.F.R. § 550.803 (1981). The court determined that because the 1981 regulation defined "pay" so broadly and because OPM comments specifically excluded from that broad definition only retirement benefits and not lump-sum payments, lump-sum payments constituted pay under the BPA. 108 Fed. Cl. at 620 (citing 46 Fed. Reg. 58,271–02). Acknowledging that later OPM regulations, which became effective in 2000, narrowed the definition of "pay," the court found that using the 2000 definition to retroactively modify the 1981 regulations would be impermissible. *Id.* (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).[6] Accordingly, the court concluded that Appel-

---

[5] 5 U.S.C. § 5596(c) authorizes OPM to promulgate regulations implementing the BPA.

[6] 5 C.F.R. § 550.803 (2000) defines pay, allowances, and differentials as "pay, leave, and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment. Agency and employee contributions to a

lants' claims for payments under the LSPA fell within the applicable statutory and regulatory definitions of "pay" under the BPA.

The court also found that Appellants qualified as "employees" for purposes of the BPA. *Id.* at 620–22. The court thus denied the government's alternative motion to dismiss pursuant to RCFC (12)(b)(6). *Id.* at 622.

After the decision of the Court of Federal Claims in *Athey II*, the government and Appellants cross-moved for summary judgment on the issue of entitlement to interest under the BPA on class members' lump-sum payments. These motions were decided in *Athey v. United States*, 123 Fed. Cl. 42 (2015) ("*Athey III*"). In *Athey III*, a Court of Federal Claims judge different from the judge who had decided *Athey I* and *Athey II* granted the government's motion for summary judgment that Appellants were not entitled to interest under the BPA. As seen, the BPA provides that interest is authorized for "an amount equal to all or any part of the pay, allowance, or differentials" lost by an "employee" who has been subjected to "an unjustified or unwarranted personnel action." 5 U.S.C. § 5596. The court held, among other things, that lump-sum payments do not, in fact, qualify as "pay, allowance, or differentials" under the BPA, so as to entitle Appellants to pre-judgment interest. 123 Fed. Cl. at 59–61.

The Court of Federal Claims first addressed Appellants' argument that *Athey II*, which denied the government's earlier 12(b)(6) motion to dismiss, *ipso facto* also

---

retirement investment fund, such as the Thrift Savings Plan, are not covered. *Monetary benefits payable to separated or retired employees based upon a separation from service, such as retirement benefits, severance payments, and lump-sum payments for annual leave, are not covered.* (Emphasis added.)

found liability to Appellants for BPA interest without the need for further argument or decision. *Id.* at 50. The court rejected this argument, pointing out that "[a]n initial denial of a motion to dismiss does not foreclose, as the law of the case, the court's later consideration of those claims on summary judgment." *Id.* (first citing *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996); then citing *Gould, Inc. v. United States*, 66 Fed. Cl. 253, 266 (2005)).

"In any event," the court continued, "whether BPA interest is available for violations of the lump-sum payment statute is an issue of largely first impression; thus, this court will not so woodenly apply the law of the case doctrine to preclude a thorough review of the claim." *Id.* at 51 (citing *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1551 (Fed. Cir. 1988)). The court stated that this was "especially true" in the instant case because the court found "clear error in one of *Athey II*'s principle findings that otherwise might have qualified for deference as law of the case." *Id.* Specifically, the court concluded that "*Athey II* erroneously held that the lump-sum payment for annual leave was 'pay' for purposes of the Back Pay Act." *Id.*

Pointing to the language of 5 U.S.C. § 5551(a), which states that "[t]he lump-sum payment is considered pay for taxation purposes only," the court observed that the LSPA "plainly and unambiguously states that the 'lump-sum payment is considered *pay for taxation purposes only.*'" 123 Fed. Cl. at 51. Further, the court noted that Appellants conceded that, by virtue of the specific limitation to taxation included in § 5551(a), a lump-sum payment does not constitute "pay." *Id.* The court also noted that the LSPA has defined the lump sum as "pay for taxation purposes only" since lump-sum payments were first authorized by Congress in 1944. *Id.* at 52 (citing Act of Dec. 21, 1944, ch. 632 § 1, 58 Stat. 845). The clear command of the LSPA, the court concluded, could not be

overcome by the reference in the BPA to "pay, allowances, or differentials."

*First*, relying upon the rule that "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling," the Court of Federal Claims reasoned that "even if the lump-sum payment statute and the BPA were found to be in conflict, . . . the lump-sum payment statute's specific definition of the lump sum would take precedence over the Back Pay Act's more general use of the term 'pay.'" *Id.* (quoting *Thiess v. Witt*, 100 F.3d 915, 919 (Fed. Cir. 1996)). *Second*, the court stated that "[t]he later-adopted BPA cannot be interpreted to supersede the earlier lump-sum payment statute because the law is clear that 'repeals by implication are not favored' absent clear congressional intent, . . . and there is no evidence of such intent here." *Id.* at 52 (quoting *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1343 (Fed. Cir. 2008)).

Having concluded that a lump-sum payment for annual leave is not "pay" for purposes of the BPA, the court stated that it could not "defer to *Athey II*'s contrary conclusion as the law of the case." *Id.*[7] The court, however, did rule that *Athey II*'s conclusion that Appellants were "employees" for purposes of the BPA was law of the case. *Id.* at 52–53.

After addressing the question of law of the case with regard to *Athey II*, the Court of Federal Claims turned to the government's motion for summary judgment. The court began by considering principles of sovereign immunity. Those principles are well-settled.

---

[7] On appeal, Appellants do not challenge the ruling of the Court of Federal Claims on the law-of-the-case issue.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Further, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). Arising from this latter principle is the corollary "no-interest rule[,] . . . to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986); *Doyle v. United States*, 931 F.2d 1546, 1550 (Fed. Cir. 1991). "Thus," the Court of Federal Claims observed, "the waiver [of sovereign immunity] as to interest must be separate from the waiver as to underlying liability." *Athey III*, 123 Fed. Cl. at 54 (first citing *Shaw*, 478 U.S. at 314; then citing *England v. Contel Adv. Sys., Inc.*, 384 F.3d 1372, 1379 (Fed. Cir. 2004)). The court concluded that "while it is plain that the lump-sum payment statute lacks a waiver [of sovereign immunity] for pre-judgment interest, the question remains whether the Back Pay Act might provide the requisite waiver based on the facts of this case." *Id.* at 55 (citations omitted). Noting that interest under the BPA could be available to Appellants if the statutory requirements were met, the Court of Federal Claims turned to the task of "analyz[ing] liability under the [BPA] element by element." *Id.*

The Court of Federal claims noted that the BPA allows interest on an amount payable to "[a]n *employee* of an agency who . . . is found by *appropriate authority* . . . to have been affected by an *unjustified or unwarranted personnel action* which ha[s] resulted in the withdrawal or reduction of all or part of the *pay, allowances, or differentials* of the employee." *Id.* at 55 (quoting 5 U.S.C.

§ 5596(b)(1)(A), (2)(A)).  The court found that, for the reasons set forth in *Athey II*, Appellants met the definition of "employee" for purposes of the BPA.  *Id.* at 55–56 (citing *Athey II*, 108 Fed. Cl. at 620–22).  The court also found that, for purposes of the BPA, it (the Court of Federal Claims) was an "appropriate authority" to consider Appellants' claims that they had suffered an unjustified or unwarranted personnel action by being improperly deprived of supplemental lump-sum payments for annual leave.  *Id.* at 57.  In addition, the court found that the "the government's failure to properly calculate lump-sum payments for annual leave qualifies as an 'unjustified or unwarranted personnel action' within the meaning of the [BPA]."  *Id.* at 59.

However, referring to Appellants, the Court of Federal Claims stated that "[e]ven if plaintiffs qualify as 'employee[s]' who suffered an 'unjustified or unwarranted personnel action,' they can only recover under the Back Pay Act if they also establish that the result was a 'withdrawal or reduction of all or part of [their] pay, allowances, or differentials.'"  *Athey III*, 123 Fed. Cl. at 59 (quoting 5 U.S.C. § 5596(b)(1)).  The court, citing *DeOcampo v. Department of the Army*, 551 F. App'x 1000, 1003 (Fed. Cir. 2014), noted that the Federal Circuit has held that lump-sum payments for annual leave do not qualify as "pay, allowances, or differentials" for purposes of the BPA based upon the OPM revisions to the BPA regulations that took effect in 2000.  *Id.* at 59.  The court pointed out, though, that the Federal Circuit has not "directly considered whether the lump-sum payment for annual leave qualified as 'pay, allowances, or differentials' before [the] . . . 2000 amendments took effect."  *Id.*

Ultimately, the Court of Federal Claims determined that it could not conclude that Appellants' lump-sum payments fell within the BPA's definition of "pay, allowances, or differentials."  *Id.* at 61.  The court rested its determination on several grounds.

The court began by examining *American Federation of Government Employees, AFL-CIO v. United States*, 622 F. Supp. 1109, 1115 (N.D. Ga. 1984), *aff'd sub nom. Am. Fed'n of Gov't Employees v. United States*, 780 F.2d 720 (Fed. Cir. 1986). *Id.* at 59–60. In that case, the United States District Court for the Northern District of Georgia considered "whether the lump-sum payment for military leave," payable under 37 U.S.C. § 501(b)(1), "constitute[d] deferred compensation, or [was] an ancillary fringe benefit afforded to persons employed by the military." 622 F. Supp. at 1115. Recognizing the similarities between § 501(b)(1) and the civilian equivalent at 5 U.S.C. § 5551(a), the district court compared the two statutes and concluded that they both authorized "a benefit, and not deferred compensation, to government and military employees." 123 Fed. Cl. at 59–60. First, the district court noted that, per the terms of § 5551(a), a lump-sum payment is "pay for taxation purposes only." *Id.* Second, the district court pointed out that both § 501(b)(1) and § 5551(a) provide that the lump-sum amount may be paid only upon discharge or separation and that, in that sense, both statutes are unlike salary. *Id.* And third, the district court observed that "[b]oth statutes provide limitations, 37 U.S.C. § 501(b)(3) (payment for no more than sixty days); 5 U.S.C. § 5551(a) (period of leave not extended due to post-separation holiday)," and that salary is not generally subject to such limitations or potential for reduction. *See id.*

The Court of Federal Claims also considered the decision of the Court of Claims in *Polos v. United States*, 231 Ct. Cl. 929 (1982). *Athey III*, 123 Fed. Cl. at 60. In *Polos*, the Court of Claims ruled that the plaintiff before it was not entitled to recover under the BPA for lost opportunities to life and disability insurance because these were not "allowance[s]" to which he was entitled while an employee. 231 Ct. Cl. at 931. In arriving at its decision, the court reasoned that lost opportunities for insurance

benefits "fall[ ] within the general category of claims for the *monetary equivalent of annual leave*, or for per diem expenses, or for interest, which have been denied in other cases as not being lost 'pay, allowances, or differentials' the employee would have earned, but for the wrongful personnel action." *Athey III*, 123 Fed. Cl. at 60 (quoting *Polos*, 231 Ct. Cl. at 931).

Next, the Court of Federal Claims turned to the 1981 OPM regulations, which broadly define "pay, allowances, or differentials" as "monetary and employment benefits to which an employee is entitled by statute or regulation by virtue of the performance of a Federal function." *See* 5 C.F.R. § 550.803 (1981). The court noted that, in comments accompanying the 1981 regulations, "OPM expressly excluded retirement benefits, but made no mention of lump-sum payments (either including them or excluding them from 'pay, allowances or differentials')." *Athey III*, 123 Fed. Cl. at 60; *see also* 46 Fed. Reg. at 58,271–72. The court observed that *Athey II* "construed this silence and potential ambiguity in favor of including lump-sum payments within the BPA." 123 Fed. Cl. at 60. The court continued, however, that, "on further reflection, . . . the better interpretation excludes lump sums from coverage under the BPA." *Id.* "Under well-established principles of sovereign immunity," the court stated, "waivers of sovereign immunity cannot be implied, and ambiguities must be construed in favor of the United States." *Id.*

The Court of Federal Claims concluded its analysis by stating that the BPA "itself distinguishes annual leave and the lump-sum payment for annual leave from 'pay, allowances, and differentials.'" *Id.* In that regard, the back payment of "pay, allowances, and differentials" is covered in 5 U.S.C. § 5596(b)(1)(A)(i). That provision authorizes a monetary benefit in "an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel

action had not occurred." Payments due under paragraph (b)(1)(A)(i) "shall be payable with interest." 5 U.S.C. § 5596(b)(2)(A). Annual leave lost as a result of an adverse personnel action, on the other hand, is addressed in a separate paragraph, at 5 U.S.C. § 5596(b)(1)(B). That paragraph "authorizes a re-crediting or restoration of that leave to an employee's leave account following correction of the adverse personnel action if the individual is still employed, or a lump-sum payment for annual leave pursuant to the lump-sum payment statute if and when [the individual] separate[s] from federal civilian service. *Athey III*, 123 Fed. Cl. at 61. "No interest is authorized on payments of [that] lump sum," the court pointed out. *Id.*

Having explained why it could not conclude that Appellants' lump-sum payments fell within the BPA's definition of "pay, allowances or differentials," the court stated that, "since plaintiffs fail to meet one of the essential criteria for relief under the Back Pay Act, their claim for interest under the BPA must fail." *Id.* Accordingly, the court entered summary in favor of the government on Appellants' claim for interest under the BPA. *Id.* at 62.

In due course, the class and the government negotiated a settlement agreement providing that the government would pay "one-hundred percent (100%) of the government's estimated exposure of back lump-sum pay as calculated by the VA." J.A. 5. The settlement amount included COLAs, Locality Pay Adjustments, and differential Sunday premium pay owed to the class members. It did not, however, include evening and weekend "additional pay" under 38 U.S.C. § 7453(a). Nor did it include interest under the BPA on their LSPA claims. After conducting a fairness hearing, the Court of Federal Claims approved the agreement on June 28, 2017, and on June 30, the court entered final judgment. J.A. 1–11.

Appellants now appeal from the Court of Federal Claims's final judgment insofar as it incorporates the court's decisions in *Athey I* and *Athey III*.

DISCUSSION

I.

*Standard of Review*

In *Athey I*, the Court of Federal Claims granted the government's motion to dismiss pursuant to RCFC 12(b)(6). "This court reviews the grant of a motion to dismiss *de novo*." *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if true, would 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell/Heery*, 739 F.3d at 1330). "The court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Id.*

In *Athey III*, the Court of Federal Claims granted the government's cross-motion for summary judgment. "We review a grant of summary judgment by the Court of Federal Claims *de novo*." *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018) (quoting *Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1032 (Fed. Cir. 2016)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting RCFC 56(a)). In this case, the pertinent facts are not in dispute. Consequently, our sole task on review is to determine whether, in granting the government's cross-motion, the Court of Federal Claims erred as a matter of law. We review the Court of Federal Claims's legal conclusions de novo. *Shell Oil Co. v. United States*, 896 F.3d 1299, 1306 (Fed. Cir. 2018) (citing *John*

*R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353 (Fed. Cir. 2006) *aff'd*, 552 U.S. 130 (2008)).

We address in turn the issues of evening and weekend additional pay and interest under the BPA.

## II.

### *Evening and Weekend Additional Pay*

#### A.

Appellants contend that the LSPA mandates that a lump-sum payment for unused annual leave "shall equal" the entire compensation an employee would have received while at work until the expiration of his or her leave. Appellants Br. 14–21. In that connection, Appellants argue that additional pay is part of an employee's entire compensation. *Id.* at 46–52. Thus, Appellants urge, to equal the compensation they would have received, the government must pay them evening and weekend additional pay. *Id.*

Appellants also argue that a lump-sum payment under the LSPA should include "additional pay" for evening and weekend work because of the interplay between 5 U.S.C. § 5551(a) and 38 U.S.C. § 7453(i). As they did in the Court of Federal Claims, Appellants argue that the term "pay" in § 5551(a) is not limited to "basic pay" (referenced in § 7453(i)), but also includes premium pay. According to Appellants, neither § 5551(a) nor § 7453(i) contemplates that the *generic term* "pay" found in the LSPA should not include additional pay. Appellants Br. 49–50.

The government responds that Appellants are not entitled to have "additional pay" included in their lump-sum payments. It argues that the "plain language and legislative history of 38 U.S.C. [§] 7453(i) clearly indicate[ ] Congress's intention to limit the lump sum pay of title 38 and hybrid employees by excluding 'additional pay.'"

Gov't Br. 39. In addition, the government urges that, in the event of any conflict between § 5551 of title 5 and § 7453(i) of title 38, the latter controls, because Congress has made clear that title 38 overrides title 5 unless otherwise stated. *See* 38 U.S.C. § 7425(b) ("Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of section 7306 of this title or this chapter shall be considered to supersede, override, or otherwise modify such provision of that section or this chapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this chapter, or such provision to be superseded, overridden, or otherwise modified.").

## B.

The pertinent rules of statutory construction are well-settled. "Our review of questions of statutory interpretation is *de novo*, except to the extent deference to an agency's construction of a statute it administers is required under the two-step analysis set forth in *Chevron* . . . ." *NSK Ltd. v. United States*, 390 F.3d 1352, 1354 (Fed. Cir. 2004) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)); *see also Vassallo v. Dep't of Def.*, 797 F.3d 1327, 1330 (Fed. Cir. 2015) (explaining that we generally review an agency's statutory interpretation using the two-pronged framework established by *Chevron*). The first prong of *Chevron* requires us to assess "whether Congress has directly spoken to the precise question at issue"; if so, we "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If the statute does not answer the precise question at issue, however, meaning that it is "silent or ambiguous," then, under prong two of *Chevron*, we must determine whether the agency provided "a permissible construction of the statute." *Id.* at 843; *Hymas v. United States*, 810 F.3d 1312, 1318 (Fed. Cir. 2016). In this case, the "precise question at issue" is

whether "additional pay" under 38 U.S.C. § 7453(a) in the form of evening and weekend pay under § 7453(b) and (c) is to be included in lump sum payments under 5 U.S.C. § 5551(a). "If the statute is clear and unambiguous, then the plain meaning of the statute is generally conclusive, and we give effect to the unambiguously expressed intent of Congress." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (2013) (citing *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990)). We agree with the parties that, in this case, the statutory language is clear as to "the precise question at issue," so that resorting to step two of *Chevron* is not necessary.

It is undisputed that the evening and weekend pay that Appellants seek constitute "additional pay" under 38 U.S.C. § 7453(a), (b), (c). Section 7453(i), in turn, expressly states that "[a]ny additional pay paid pursuant to [§ 7453] shall not be considered as basic pay for the purposes of [5 U.S.C. § 5551 (the LSPA)]." This language is clear. As the Court of Federal Claims stated in *Curry v. United States*, "Congress has 'with clarity' determined via section 7453(i) that lump-sum separation pay should not include additional pay." 66 Fed. Cl. 593, 600 (2005), (quoting *Lanehart v. Horner*, 818 F.2d 1574, 1582 (Fed. Cir. 1987)). Appellants' argument that we should draw a distinction between "basic pay" in § 7453(i) and "pay" in 5 U.S.C. § 5551 and thereby prevent the application of § 7453(i)'s bar to their case is unavailing. Not only is the argument not supported by the statutory language, but it is contrary to the pertinent legislative history:

> [Section 7453(i)] provides that additional pay under this new subsection will not count as basic compensation for lump-sum leave payments, severance pay, and other benefits relating to basic compensation.

H.R.Rep. No. 93-368, at 1708 (1973), reprinted in 1973 U.S.C.C.A.N. 1688, 1708, 1973 WL 12602.

In sum, the plain language of 38 U.S.C. §7453(i) compels the conclusion that Appellants are not entitled to have evening and weekend "additional pay" included in their lump-sum payments under the LSPA.

## III.

### *Pre-Judgment Interest*

### A.

Appellants contend that lump-sum payments constitute "pay, allowances, or differentials" for purposes of the BPA and its provision for pre-judgment interest. Appellants argue that the legislative history of the BPA demonstrates that Congress acted to ensure that federal employees wrongly deprived of compensation through unwarranted or unjustified personnel action be made entirely "whole" as if the unlawful action had never happened. *See* Appellants Br. 22–23 (citing Restoration of Excess Annual Leave Lost Due to Certain Personnel Action: Hearing Before the Subcomm. on Retirement and Employee Benefits of the H. Comm. on Post Office and Civil Service, 94th Cong. 1–2 (1975)). Appellants also argue that Congress has come to realize that being made "whole" includes interest on any back pay awarded. *See* Appellants Br. 26–27 (quoting H. Comm. on Post Office and Civil Service, 96th Cong. Legislative History of the Civil Service Reform Act of 1978, Vol. I at 697–98, 1054 (Comm. Print 1979) ("As revised by the bill, section 5596(b)(1) of title 5 entitles the employee to the recovery of an amount equal to all or any part of the pay, allowances, or differentials, as applicable[,] that the employee normally would have earned or received if the personnel action had not occurred, less any amounts earned by him through other employment during that period[,] plus interest on the amount payable.")); *see also* 5 C.F.R. § 550.803 (1981).

Appellants further contend that OPM's 1981 regulations support their claim. As seen, the regulation set forth at 5 C.F.R. § 550.803 defined "[p]ay, allowances, and differentials" to mean "monetary and employment benefits to which an employee is entitled by statute or regulation by virtue of the performance of a Federal function." 46 Fed. Reg. 58,275 (1981). Appellants argue that the 1981 regulation demonstrates that OPM interpreted the BPA as "making the employee financially whole," which includes interest on lump-sum payments. Appellants Br. 28 (quoting 5 C.F.R. § 550.801), 42–43. Appellants urge that the Court of Federal Claims should have deferred to OPM's interpretation of the terms "pay, allowances, and differentials" under *Chevron* step two. *Id.* at 33–40. The relevant interpretation, according to Appellants, is included in the 1981 regulations that defined "pay" much more broadly than the 2000 revisions, so as to include lump-sum payments. *Id.* at 38–39.

The government responds that the BPA itself bars the payment of interest on lump-sum payments for accrued and unused leave. Gov't Br. 11–13. The government points to the fact that the LSPA expressly states that a lump-sum payment is considered pay for taxation purposes only, and urges that any conflict between the LSPA and BPA should be resolved by using the LSPA's specific reference to "lump sum" over the BPA's general use of "pay." *Id.* at 14–15. To the extent that the BPA's language is ambiguous about whether lump-sum payments are included in its coverage, the government argues, Appellants' claim must fail because, as *Athey III* stated, 123 Fed. Cl. at 54–55, a waiver of sovereign immunity to consent to being sued cannot be ambiguous. Gov't Br. 19–20 (citing *Shaw*, 478 U.S. at 318). Finally, while the government agrees with Appellants that OPM's 1981 regulation is entitled to *Chevron* deference, it asserts that OPM "has consistently defined [pay, allowances, and

differentials] to exclude post-retirement payments such as 'lump sum payments for accrued annual leave.'" *Id.* at 23.

In the alternative, the government argues that Appellants are not entitled to interest on their lump-sum payments because the BPA covers only "employees" who have been subjected to "unjustified or unwarranted personnel actions." According to the government, Appellants do not qualify as "employees" under the statute. *Id.* at 27–34.

## B.

We hold that the Court of Federal Claims did not err in ruling that Appellants are not entitled to pre-judgment interest on the lump-sum payments they received for accrued and unused leave. As the Court of Federal Claims recognized, the starting point in the analysis is the proposition that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *Sherwood*, 312 U.S. at 586. Moreover, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane*, 518 U.S. at 192 (citations omitted). Finally, as the Court of Federal Claims also recognized, pertinent to this case is the "no-interest rule," which states that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest," *Shaw*, 478 U.S. at 311. We agree with the Court of Federal Claims that neither the LSPA nor the BPA provides the required waiver of sovereign immunity for Appellants' claims for interest on their lump-sum payments.

To begin with, the LSPA plainly and unambiguously supports the Court of Federal Claims's conclusion that Appellants' lump-sum payments are not "pay" under the BPA. *See Athey III*, 123 Fed. Cl. at 52. As the Court of Federal Claims pointed out in the portion of *Athey III* in which it declined to accord law-of-the-case deference to *Athey II*, *see id.* at 51, the LSPA states that only for the

purposes of taxation will lump-sum payments be considered pay. In this case, the critical word "only" appears at the end of the pertinent sentence in § 5551(a). Thus, the unambiguous meaning is that for any purposes *other than* taxation, a lump-sum payment is *not* considered pay, a point Appellants conceded before the Court of Federal Claims. *Athey III*, 123 Fed. Cl. at 51. There is no other way to read the statute; this reading is conclusive. And since the BPA is not for purposes of taxation, a lump-sum payment is not considered "pay" under that statute, as the Court of Federal Claims found.

Neither does the BPA itself provide the express waiver of sovereign immunity required for an award of interest on Appellants' lump-sum payments. Though the Court of Federal Claims found that the language of the LSPA makes it clear that a lump-sum payment does not constitute "pay" for purposes of the BPA, the court nevertheless examined both the BPA and OPM's 1981 regulations in order to determine whether, for purposes of the BPA, Appellants could establish that they had suffered a "withdrawal or reduction of all or part of [their] pay, allowances or differentials." 123 Fed. Cl. at 59. We have recited at length the court's analysis.

As discussed above, the BPA waives sovereign immunity as to interest when "[a]n *employee* of an agency . . . is found by *appropriate authority* . . . to have been affected by an *unjustified or unwarranted personnel action* which has resulted in the withdrawal or reduction of all or part of the *pay, allowances, or differentials of the employee*." 5 U.S.C. § 5596(b)(1)(A), (2)(A) (emphasis added). Assuming without deciding that Appellants meet the requirements of "employee," "appropriate authority," and "unjustified personnel action," we agree with the Court of Federal Claims that they fail to meet the requirement of "withdrawal or reduction of all or part of [their] pay, allowances, or differentials." Quite simply, as the court's thorough analysis demonstrates, there is

nothing in the BPA that reveals the required express waiver of sovereign immunity for an award of interest on Appellants' lump-sum payments. Appellants' reliance on general legislative history statements is misplaced. These statements cannot alter the fact that the express waiver required in the statutory language is missing. *See Lane,* 518 U.S. at 192 ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text."); *United States v. Nordic Vill., Inc.,* 503 U.S. 30, 37 (1992) ("[T]he 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in the statutory text. If clarity does not exist there, it cannot be supplied by a committee report."); *De Archibold v. United States,* 499 F.3d 1310, 1313–14 (Fed. Cir. 2007) ("We cannot resort to the legislative history to find a waiver not otherwise unequivocally expressed in the statute.").

Also misplaced is Appellants' reliance on its view of OPM's 1981 regulation defining "pay, allowances, and differentials." Language in a regulation cannot take the place of the statutory language needed in order to meet the requirement of an express waiver of sovereign immunity. "Only an express *statute* suffices to waive the sovereign immunity of the United States." *Former Emps. of Quality Fabricating, Inc. v. U.S. Sec'y of Labor*, 448 F.3d 1351, 1354 (Fed. Cir. 2006) (emphasis added) (citing *West v. Gibson*, 527 U.S. 212, 217 (1999)).

In any event, even if the 1981 regulation could, as a matter of law, provide the required waiver, it fails to do so. We agree with the Court of Federal Claims in *Athey III* that while the 1981 OPM regulation defined "pay, allowances, or differentials" broadly, a broad definition cannot overcome the settled requirement that waivers of sovereign immunity be explicit, with any ambiguity construed in favor of the United States. *See Shaw*, 478 U.S. at 318. In this case, since the 1981 regulation never explicitly mentioned lump-sum payments either way, we

construe that ambiguity in favor of the United States and conclude that the regulation did not authorize the payment of BPA interest.

In sum, since Appellants' lump-sum payments do not constitute "pay, allowances, or differentials," Appellants have failed to demonstrate the required waiver of sovereign immunity. We therefore affirm the Court of Federal Claims's holding that the United States is not liable for pre-judgment interest under the BPA.

## CONCLUSION

For the foregoing reasons, the decisions of the Court of Federal Claims in *Athey I* and *Athey III*, as incorporated in the court's final judgment of June 30, 2017, are affirmed.

## **AFFIRMED**

### COSTS

No costs.